## Morehead Hotel & Apartment Co. et al. v. Lampkin et al.

(Decided Feb. 5, 1937.)

RODES & WILLOCK for appellants.

MILLIKEN & MILLIKEN and J. FRANK DENTON for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The nature of this action, the questions, and the manner in which they are presented require that this opinion take an unusual form.

The appellants are the Morehead Hotel & Apartment Company (a corporation) and Dr. T. O. Helm. They brought the suit and we shall refer to them as plaintiffs.

The appellees are C. W. Lampkin, the Lampkin Hotel Company (a corporation), and the city of Bowling Green, a municipal corporation. We shall refer to these as defendants.

Many disconnected claims are involved, but no one

made any complaint of misjoinder. The case was heard below in a sort of omnibus fashion and we shall treat it the same way.

The plaintiff hotel and apartment company is practically another name for Dr. T. O. Helm as he owns about all of its stock, and the defendant hotel company is practically another name for C. W. Lampkin for the same reason.

Plaintiffs, by suit filed April 16, 1935, sought a declaration of rights regarding various matters connected with Lampkin and his hotel company, which we shall state and dispose of as we reach them.

### The Annex.

Dr. Helm owned a building adjoining his hotel called the "Annex." He leased to the Lampkin Hotel Company all of it except the lower floor. This is copied from their contract made September 30, 1933:

"The said T. O. Helm is the owner of a building known as the Annex adjoining the new Helm Hotel building, and he now leases to the Lampkin Hotel Company the said Annex for the remainder of the term of the lease under which the said Helm Hotel is now being operated and it is understood that this particular lease now being given shall take effect as of September 30, 1933.

"It is agreed that the said Lampkin Hotel Company shall pay to the said T. O. Helm as rent, two thirds of the gross receipts actually collected from rentals of the said Annex and may appropriate for its own use the other one third. It is understood that the said Lampkin Hotel Company will operate the said Annex in connection with and as an annex to the Helm Hotel. T. O. Helm is to keep up the needed repairs of the exterior portion of the Annex, while the Lampkin Hotel Company is to keep up the repairs of the interior of same and such needed interior repairs so made by the Lampkin Hotel Company shall be deducted from the actual collections and the remainder shall be gross receipts mentioned above and to be divided in the proportion of one third and two thirds respectively."

Without setting them out in pleading, Dr. Helm in-

troduced evidence to show divers sums due him on account of this annex. Dr. Helm omitted nothing, and in his Exhibit No. 3 there is a claim for 2 cents for a stamp on a check, and one page of this record is devoted to an explanation of it. This illustrates his meticulous care. Dr. Helm asserted the Lampkin Hotel Company owed him $26 for some internal repairs on the annex that he had made and that Lampkin should have made. Mr. Lampkin's bookkeeper files with his deposition (page 250) a claim for $10.65 that he testifies Dr. Helm should pay but did not pay, and sets out and itemizes a loss of $150.50 which the Lampkin Hotel Company sustained in February, 1935, by a leaking roof due to failure of Dr. Helm to repair it. Another claim for $38 was for similar loss in April, $80 was for similar loss in May, and so on.

All these claims were seemingly adjusted satisfactorily, except Dr. Helm's claim for $26. That is the only one of which any complaint is made here. It looks like that is a repair the Lampkin Hotel Company should have made, but if it had made it two-thirds of the cost of making it would have been borne by Dr. Helm, for he gets two-thirds of the profits made from the operation of the annex after deducting the cost of making the interior repairs; so Dr. Helm's net loss can be only one-third of $26, or $8.66, and by referring to volume 2 of West's Kentucky Digest, Appeal and Error, the reader will see we do not reverse judgments for such sums. That rule is followed generally. See 4 C. J. p. 1177, sec. 3208.

### Settlements.

The plaintiffs contended that the defendants had not kept proper record of the affairs of the annex. The contract regarding the annex does not say how the books shall be kept or how often statements of its affairs shall be furnished to Dr. Helm.

The trial court in its judgment disposed of this contention in this way:

"The court is further of the opinion and so adjudges that the defendants are under the obligation of keeping correct accounts of their operation of the annex as required by the contract and of making monthly statements to the plaintiffs listing

every room, showing the price it rents for, the name of the occupant, the amount of the rental actually collected on each room, and the amount uncollected; also the amount of internal repairs, if any, deducted from gross receipts. And after such deductions and upon such reports being made, the said Lampkin Hotel Company will pay to the plaintiffs two thirds of the gross receipts month by month.''

We can find no fault in that.

### The A. D. Noe Accounts.

As the trial court left this matter open for further report from Lampkin, this is not a final order, so we will say no more about it.

### Interest on Rent.

Under the lease from plaintiff, Lampkin and his hotel company were to pay for their lease $2,000 per month in advance, but their relations with plaintiffs being cordial and friendly, they paid somewhat irregularly. Later they had a misunderstanding and plaintiffs gave defendants notice the rent must be paid on the first as provided in the contract and since then it has been so paid, but plaintiffs now want to go back, make claim for and recover interest on those rentals that had been paid, from the time it was due until it was paid, but the court treated those matters as settled when the parties settled, and we think rightfully so. The parties had construed this lease as not calling for interest, had made divers settlements without interest, and plaintiffs are bound by their settlements, their construction of the lease then and their waiver of their rights to collect that interest, on those payments. When plaintiffs demanded prompt payment, they got it. Plaintiffs did not think enough of this claim to calculate exactly what this interest would amount to, and there is not sufficient data in the record to enable it to be done accurately; hence we approve the trial court's disposition of it.

### Insurance.

The plaintiffs contend that by their contract Lampkin and his hotel company were to keep the furnishings of this hotel insured for 75 per cent. of their value with

loss payable clause attached in favor of plaintiffs as their interests may appear. Lampkin and his hotel company concede that and aver that has been done. The judgment requires that that be done, and found it had been done. So we find no cause for complaint.

### The Sewer Charge.

This is the principal contention and we are sure has been the cause of these men being at loggerheads.

The defendant city of Bowling Green in its answer asserts its right to collect certain charges for the use of its sewers from both its codefendants and the plaintiffs, and alleges there is due it the sum of $654.80 which all of them owe it, and expresses no preference as to who should pay it, but asks judgment against all of them. The correctness of this bill is not disputed by either Dr. Helm and his hotel and apartment company on the one side, or by Lampkin and his hotel company on the other; each contends the other should pay it.

Formerly this hotel and many adjoining buildings were connected with a sewer known as ''The Spring Alley Sewer,'' which had been constructed by the city and property owners under an ordinance approved June 22, 1923. In 1933 the city of Bowling Green purchased this sewer from Dr. Helm and the other property owners who in connection with the city had constructed it ten years previously. This purchase was made under an ordinance approved May 16, 1933.

Under the previous arrangement, there had been no charge against this hotel for the use of that sewer. Mr. Lampkin under a former lease had operated this hotel for eight years while that arrangement existed. He then, of course, paid no sewer charges. No one paid any. There were none. Lampkin and his hotel company now operate this hotel under a lease made to A. D. Noe on January 1, 1932, which was transferred to the Lampkin Hotel Company by Dr. Helm and C. W. Lampkin in November, 1933, the rent being modified in certain respects by that assignment and contemporary agreements.

When Dr. Helm was endeavoring to induce Lampkin to join with him as his partner and to contract with Noe for the assignment of this lease to them, he knew he had sold this private sewer to the city. He knew

there would soon be sewer charges made by the city. There is no evidence Lampkin knew this. Dr. Helm should have spoken out clearly then. It was his duty to exercise the utmost good faith with Lampkin. 47 C. J. p. 660, sec. 51. Without mentioning his sale of the sewer to the city, he encouraged Lampkin to go in with him and to contract for the assignment to them of the Noe lease. Dr. Helm's conduct caused the trial court to say:

"Helm having failed in his duty to acquaint Lampkin with the fact, when he and Lampkin took over the hotel from Noe in the summer of 1933, that he had sold his interest in this private sewer line the May previous, he is now estopped to deny his liability for the sewer service."

"Another thing which convinces us Dr. Helm should pay this sewer charge is he individually owns the Annex. This Annex, as we gather from the record, was connected with the private sewer through the same pipe which connects the hotel, and through the same pipe the annex is connected with the city sewer along with the hotel. The annex has a separate water meter from the hotel, but the two buildings have a joint sewer connection and there is no way to separate the sewer charges of the hotel from those of the annex. Lampkin has no connection whatever with the first floor of the annex."

In that lease there is this provision which has not been changed or modified in any way:

"The lessee agrees to pay all assessments, charges, taxes, and licenses levied by municipal or other governmental authority upon the hotel *by reason of its conduct as such,* as well as all taxes of every kind upon the furnishings and equipment thereof; but the lessor shall pay all property taxes upon the lot and the buildings thereon, as well as maintain at his own expense the fire and tornado insurance thereon."

The question is, as between the lessors and the lessees, who shall pay this $654.80. The trial court directed that it should be paid by the lessors, and it is clear that such is the correct interpretation of the pro-

vision of the lease. The first twenty-one words in this provision are:

"The lessee agrees to pay all assessments, charges, taxes and licenses levied by municipal or other governmental authority upon the hotel. * * *"

If this provision had stopped at that point, the contention of the plaintiff's would have had considerable force, but the provision continues and the next seven words, *"by reason of its conduct as such,"* show what sort of assessments, etc., levied on this hotel the lessees are to pay. They must pay those levied on this hotel by reason of its conduct as such. In other words, these lessees must pay any assessment made against this building, not because it is a building connected with the municipal sewers, but because it is used as a hotel.

Being used as a hotel, is there any charge made against it that would not be made were it used as an office building, as a hospital, as a school, as an orphanage, or as a factory? If so, the lessees must pay that charge whatever it is. We have examined the city ordinances fixing these charges and we find the charges are based on the number of rooms in the building and the number of cubic feet of water discharged into the sewers.

This does not mean the lessors must pay for the water used by this hotel that is a separate and distinct charge, and the hotel must pay for the water it uses. Thus if the hotel receives 4,000 cubic feet of water, it must pay for 4,000 cubic feet of water. If it uses 2,000 cubic feet of this in sprinkling lawns, etc., and that is separately metered as provided by section 8 of city ordinance passed November 27, 1933, there is no sewer charge for that, but if the other 2,000 cubic feet of water is used in bath tubs, lavoratories, etc., and thus finds its way to and is discharged into the municipal sewers, there will be a sewer charge on that 2,000 cubic feet so discharged, and that and other sewer charges the lessors must pay.

Not only does this contract show the lessors were to pay these sewer charges, but Dr. Helm, by failing to speak when he should have spoken, is estopped to say otherwise.

### Expense of Incorporating.

On September 30, 1933, Dr. Helm and C. W. Lamp-

kin purchased from A. D. Noe his lease on the Helm Hotel. Later they arranged to operate this hotel under the name of the Lampkin Hotel Company, a corporation, and Dr. Helm paid $55 as his one-third of the expense of incorporating it.

In November, 1933, Helm and Lampkin transferred to this corporation the lease on the Helm Hotel which they had purchased of Noe.

On December 8, 1933, Dr. Helm sold to Lampkin his stock in this corporation. Dr. Helm sought in this suit to recover the $55 which he had paid as his share of the expense of organizing the corporation. The court did not allow Dr. Helm this $55, and properly so.

Judgment affirmed.